## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

VISHAL DHAR,
      Petitioner,

      v.

UNITED STATES,
      Respondent.

No. 3:25-cv-64 (SRU)

## ORDER ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Vishal Dhar filed a motion seeking to vacate his plea, conviction, and sentence under 28 U.S.C. § 2255 due to what he argues was his counsel's failure to "properly advise him and the Court regarding the certainty of deportation." Doc. No. 4 at 1. Dhar states that, due to the ineffective assistance of counsel, he now faces mandatory detention by Immigration and Customs Enforcement ("ICE") pending removal proceedings. *Id.* For the following reasons, I **deny** Dhar's section 2255 petition.

### I.      Background

On May 23, 2024, Vishal Dhar was charged by a one-count information with evading a total of $272,390.07 in income tax payments. *United States v. Dhar*, No. 3:24-cr-00111 ("Criminal Case"), Docs. No. 4, 5. Dhar plead guilty to the one-count information. Criminal Case, Docs. No. 6, 8. Dhar now claims he received ineffective assistance of counsel from his defense counsel during plea negotiations and sentencing. *See generally* Doc. No. 4. Dhar alleges that his attorneys failed to properly advise him of the immigration consequences of pleading guilty. *See generally id.*

Dhar hails from India, where he has lived on and off for most of his life.  *See* Presentence Investigation Report ("PSR"), Criminal Case, Doc. No. 31 ¶¶ 39-40, 42.  Dhar became a United States legal permanent resident in 2007.  *Id.* ¶ 43.  He is not a United States citizen.  *See id.*

Dhar challenges the effectiveness of his criminal defense counsel, Attorney Scott Ahroni and Attorney Kurt Erskine from Polsinelli PC.  Doc. No. 4 ¶ 8.  Dhar retained Attorneys Ahroni and Erskine and their firm (collectively, "Polsinelli") in August 2023 "to represent him in responding to grand jury subpoenas . . . as part of an IRS/DOJ criminal tax investigation."  *Id.* Dhar "repeatedly indicated" in "constant conversation[s]" with Polsinelli "that immigration consequences were of utmost concern to him and that he would be willing to submit to harsher punishment if it meant sparing him certain deportation."  *Id.* ¶ 9.

In November and December 2023, Polsinelli informed Dhar of the possible immigration consequences to pleading guilty.  *Id.* ¶¶ 10-11.  Polsinelli informed Dhar that he could be deported if he plead guilty.  *Id.*  Dhar spoke with an immigration attorney, "who w[as] unable to help him."  *Id.* ¶ 12.  Polsinelli sent Dhar an article highlighting the possible immigration consequences to pleading guilty to certain federal charges.  *Id.*

In February 2024, Polsinelli introduced Dhar to a criminal defense attorney whom Dhar never retained, Nicholas Kaizer.  *Id.* ¶ 13.  Kaizer allegedly told Dhar that repaying his fines, penalty, and interest in full prior to sentencing "would go a long way towards minimizing your custodial exposure and the possibility of collateral consequences (meaning removal from the United States)."  *Id.* ¶ 14 (cleaned up).  Polsinelli repeated Kaizer's advice to Dhar regarding the likelihood of deportation.  *Id.*  "Polsinelli . . . assured me and my family that, since I had paid the restitution and had no prior convictions, it was almost certain that the judge would rule against incarceration, thus preventing deportation."  Doc. No. 7-3 ¶ 14.

That same month, Dhar received a draft plea agreement from Assistant United States Attorney ("AUSA") David Huang.  *See* Doc. No. 4 ¶ 15.  The draft plea agreement contemplated a guilty plea to a violation of 26 U.S.C. § 2701 and a stated loss amount to the United States of $272,390.07.  *Id.* ¶¶ 15, 22.  The plea agreement signed by Dhar and accepted by the Court stated the following:

> The defendant understands that pleading guilty may have consequences with respect to his immigration status if the defendant is not a citizen of the United States. Under federal law, noncitizens are subject to removal for a broad range of crimes, including the offense(s) to which the defendant is pleading guilty. Indeed, because the defendant is pleading to Count One of the Information, an offense that involves fraud or deceit in which the loss to the victim exceeds $10,000, ***removal is presumptively mandatory***. Likewise, if the defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization and removal. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is automatic removal from the United States.
>
> ***The defendant understands that he is bound by the guilty plea regardless of the immigration consequences of the plea***. Accordingly, the defendant waives any and all challenges to the guilty plea and to the sentence based on those consequences, and agrees not to seek to withdraw the guilty plea, or to file a direct appeal or any kind of collateral attack challenging the guilty plea, conviction, or sentence, based on the immigration consequences of the guilty plea, conviction, or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

Criminal Case, Doc. No. 8 at 7-8 (emphasis added); Criminal Case, Doc. No. 6.

On March 27, 2024, Attorney Erskine sent a draft plea agreement to Dhar that was "not substantially different from the original draft plea agreement" sent to Dhar in February 2024.  Doc. No. 4 ¶¶ 15, 17.  Dhar advised Attorney Erskine on March 29, 2024 "that he intended to accept the plea agreement."  *Id.* ¶ 18.  Attorney Erskine relayed Dhar's intention to AUSA Huang on the same day.  *Id.*

On April 16, Polsinelli introduced Dhar to an immigration attorney whom Dhar never retained, Alexandra Tseitlin. *Id.* ¶¶ 19-20. Both Polsinelli and Dhar were present during a meeting with Tseitlin. *Id.* ¶ 20. According to Dhar, "[t]he consensus of the attorneys at the meeting was that immigration consequences would only arise for [Dhar] if he was sentenced to a custodial prison sentence." *Id.*

Although neither party filed an affidavit from Polsinelli in support of or in opposition to Dhar's petition[1], a February 12, 2025 email to Dhar's current counsel from Polsinelli's general counsel states that "Polsinelli never advised Mr. Dhar that he would not be deported if he did not receive prison time, as alleged in the § 2255." Doc. No. 7-2 at 4. In that email, Polsinelli's general counsel claims that "Polsinelli did not provide legal advice to Mr. Dhar with regard to the immigration consequences of his plea other than to specifically advise him that he was pleading guilty to a felony that would likely result in his deportation from the United States."[2] *Id.*

Dhar appeared before me at a plea hearing on May 23, 2024. Criminal Case, Doc. No. 6. He waived his right to indictment and pled guilty to Count One of the information, which charged tax evasion in violation of 26 U.S.C. § 7201. Criminal Case, Docs. No. 5-6, 8. The plea

---

[1] The government complains in a footnote to its opposition that the scheduling order entered in this case did not allow it "sufficient time to fully respond to the affidavits" submitted by the petitioner. Doc. No. 8 at 1 n.1. The government, however, never sought to extend the deadline for filing its opposition. Extensions have been liberally granted in this matter.

[2] In support of his habeas petition, Dhar offers three affiants besides himself. Attorney Robert Stolzberg states his opinion that Polsinelli rendered ineffective assistance. *See generally* Doc. No. 7-1. Attorney Alexander Taubes similarly claims that Polsinelli's advice regarding Dhar's "likely . . . deportation" following a guilty plea misconstrued the standard set forth in *Padilla v. Kentucky*, 559 U.S. 356 (2010). Doc. No. 7-2 ¶¶ 3a, 4, 7. Attorney Patrick Taurel, Dhar's later-retained immigration lawyer, offers his opinion that "an immigration judge would have no difficulty concluding that Mr. Dhar's conviction . . . constitutes an aggravated felony" subjecting Dhar to mandatory deportation. Doc. No. 7-4 ¶ 17 (citing 8 U.S.C. § 1011(a)(43)(M)(ii)). I find the allegations in the affidavits "to be entirely conclusory." *Seabrook v. United States*, 2020 WL 5764370, at *4 (S.D.N.Y. Sept. 27, 2020). Additionally, "it is unclear from the affidavit what level of personal knowledge [the affiants have] of the circumstances relevant to [Dhar's petition]." *Id.* Therefore, I give the affidavits limited weight in my analysis of Dhar's claims.

agreement accepted by Dhar was substantially similar to the draft plea agreement circulated in February 2024. Doc. No. 4 ¶¶ 17-18; *compare id.* ¶ 15 *with* Plea Agreement, Criminal Case, Doc. No. 8 at 7-8 (reflecting identical provisions on possible immigration consequences in the draft plea agreement and the accepted plea agreement).

Before I accepted Dhar's plea, I warned him about the immigration consequences of pleading guilty:

> THE COURT: . . . You are not a U.S. citizen, and I want to advise you that if you plead guilty today, there is a strong likelihood that you will be deported from this country or removed from this country due to your conviction. Do you understand that?
>
> THE DEFENDANT: I understand that, your Honor.
>
> THE COURT: Have you sought legal advice regarding immigration consequences of this plea?
>
> THE DEFENDANT: Yes, we have sought legal advice.

Criminal Case, Doc. No. 41 at 20:08-19.

On October 7, 2024, I sentenced Dhar to a term of imprisonment of one year and one day and a two-year term of supervised release. Criminal Case, Doc. No. 28; Criminal Case, Doc. No. 32 at 1. I additionally imposed $272,390.07 of restitution. Criminal Case, Doc. No. 32 at 2. At the sentencing hearing, I asked Polsinelli and Attorney Huang to explain Dhar's immigration consequences. *See* Doc. No. 34 at 77:16-17. Attorney Huang responded, "I believe that given the fact that the loss amount is greater than $10,000, it is a deportable offense. Whether that in fact will lead to deportation is . . . someone else's decision." *Id.* at 77:18-21, 77:23. Polsinelli added that although Dhar was not currently facing deportation proceedings, he would nonetheless "qualify for potential deportation" because his conviction involved a crime of moral turpitude. *Id.* at 78:02-04, 78:10-13. I asked if counsel "ha[d] an understanding [of] what is actually going to happen" regarding deportation. *Id.* at 78:06-07. Polsinelli was unsure: "I

don't believe we can – that will be determined through the system"—that is, ICE and the immigration courts. *See id.* at 78:08-09.

Dhar "finally consulted" with an immigration lawyer, Attorney Patrick Taurel, after sentencing. Doc. No. 7-3 ¶ 16; *see* Doc. No. 7-4 ¶ 1. Only then did Dhar allegedly "learn[] the true consequences of [his] plea. As an aggravated felon, [Dhar] face[d] mandatory ICE detention . . . followed by deportation and permanent banishment from the U.S." Doc. No. 7-3 ¶ 16. Dhar appealed his judgment on October 21, 2024. Criminal Case, Doc. No. 35. The Second Circuit granted Dhar's motion to voluntarily dismiss his appeal on January 10, 2025. Criminal Case, Doc. No. 38. Dhar filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on January 13, 2025. Doc. No. 1. On January 23, 2025, Dhar filed an amended section 2255 petition. Doc. No. 4.

## II.    Standard of Review

Section 2255 provides a prisoner in federal custody a method to challenge the legality of his or her sentence. To obtain relief under section 2255, the petitioner must show that his or her prior sentence was invalid because: (1) it was imposed in violation of the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) it exceeded the maximum detention authorized by law; or (4) it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The standard is stringent; even constitutional errors will not be redressed through a section 2255 petition unless they have had a "substantial and injurious effect" that results in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637-38 (1993) (internal citations omitted); *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s standard to a section 2255 petition). Finally, the petitioner bears the burden of proving, by a preponderance of the evidence, that he is entitled to relief. *Napoli v. United*

*States*, 45 F.3d 680, 683 (2d Cir. 1995); *Blackmon v. United States*, 2019 WL 3767511, at *4 (D. Conn. Aug. 9, 2019).

If a petitioner fails to raise an issue upon direct appeal, that issue will be deemed procedurally defaulted and unreviewable absent a demonstration of ineffective assistance of counsel, an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)); *Baxter v. United States*, 2010 WL 4823241, at *1 (D. Conn. Nov. 18, 2010).

A petitioner is entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "Mere generalities or hearsay statements will not normally entitle the applicant to a hearing . . . . The petitioner must set forth specific facts which he is in a position to establish by competent evidence." *Dalli v. United States*, 491 F.2d 758, 760-61 (2d Cir. 1974) (citations omitted). Absent supporting facts, the court may resolve a petitioner's claims without a hearing. *See id.* at 760-62.

## III.    Discussion

Dhar argues his sentence was imposed in violation of the Constitution because he received ineffective assistance of counsel. Doc. No. 4 at 1. To establish that he has been denied effective assistance of counsel, a petitioner must show both that: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and that (2) counsel's deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *See also Hill v. Lockhart*, 474 U.S. 52, 58 (1985) ("[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.").

7

On review, the court "strongly presume[s]" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Further, "[i]n the case of an early plea," courts must avoid "an after-the-fact assessment . . . run[ning] counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered."  *Premo v. Moore*, 562 U.S. 115, 126 (2011); *id.* at 125 ("In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel.").

"[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.  With respect to the performance prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct.'"  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).  With respect to the prejudice prong, the petitioner must establish that that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

A petitioner claiming ineffective assistance bears a heavy burden.  "If the attorney made a strategic choice after thoughtful consideration, that decision will be 'virtually unchallengeable.'"  *United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) (quoting *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005)).  "[E]ven strategic choices made after less than complete investigation do not amount to ineffective assistance—so long as the known facts made

it reasonable to believe that further investigation was unnecessary." *Henry*, 409 F.3d at 63

(citing *Strickland*, 466 U.S. at 690-91). Indeed, courts have "declined to deem counsel

ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox, or

downright ill-advised." *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996). "The challenger's

burden is to show that counsel made errors so serious that counsel was not functioning as the

counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter,* 562 U.S.

86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks omitted).

> a. *Whether Counsel's Performance Fell Below an Objective Standard of*
> *Reasonableness*

Dhar alleges that he "was provided objectively unreasonable representation

because the advice he [received] on the immigration consequences of his plea contained

misrepresentations and incorrect information." Doc. No. 4 ¶ 30. Specifically, Dhar

claims he was "affirmatively misled into believing there were things that could be done to

avoid deportation, such as winning a non-custodial sentence or retaining an immigration

attorney after sentencing." *Id.*

Dhar alleges that, in November 2023, Attorney Ahroni emailed him and indicated that "a

tax conviction *could* be a ground for deportation." *Id.* ¶ 10 (emphasis added). In the same email,

Attorney Ahroni stated that "if the tax crime is considered an aggravated felony, it would also be

a ground for deportation." *Id.* Attorney Ahroni further explained, "an aggravated felony is one

where the damage or loss exceeds $10,000. This would *certainly be the case in your situation*."

*Id.* (emphasis added). Therefore, from as early as November 2023, Dhar's attorney warned him

that the crime with which he would "certainly" be charged was "ground[s] for deportation." *Id.*

A December 2023 email from Attorney Ahroni to Attorney Erskine and Dhar confirms that Dhar

was advised of the risk of deportation from pleading guilty. *Id.* ¶ 11 ("The major obstacle with a plea is the deportation aspect.").

However, after an April 16, 2024 meeting with immigration attorney Alexandra Tseitlin, Dhar claims that Polsinelli's advice "was to plead guilty and try to keep [Dhar] from receiving a custodial prison sentence," which "would avoid immigration consequences."[3] *Id.* ¶¶ 19-21.

Under 8 U.S.C. § 1101(a)(43)(D), an aggravated felony includes "an offense described in section 1956 of title 18 . . . or section 1957 of that title . . . if the amount of the funds exceeded $10,000."[4]  A noncitizen convicted of an aggravated felony "is not only deportable, . . . but also ineligible for . . . discretionary forms of relief." *Moncrieffe v. Holder*, 569 U.S. 184, 187 (2013) (citing 8 U.S.C. § 1227(a)(2)(A)(iii)); 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable.").  However, 8 U.S.C. § 1227(a)(2)(A)(iii) does not state that a person convicted of an aggravated felony "is automatically deported" or "will be deported."  Instead, the statute states that the person becomes "deportable." *See* 8 U.S.C. § 1227(a)(2)(A)(iii).  In other words, although a noncitizen convicted of an aggravated felony *can be* deported, and in fact may likely be deported, deportation is neither an automatic nor a necessary consequence of pleading guilty to an aggravated felony. Polsinelli correctly advised Dhar that deportation was a "likely consequence" of pleading guilty. *Cf. Padilla*, 559 U.S. at 368 ("Padilla's counsel could have easily determined that

---

[3] Dhar never retained Attorney Tseitlin. *Id.* ¶ 20.
[4] Dhar does not dispute that Polsinelli adequately advised him that the crime he was charged with violating was an aggravated felony. *See generally* Doc. No. 4. *See also* 18 U.S.C. § 1956(a)(1) (criminalizing "conduct[ing] or attempt[ing] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with intent to engage in conduct constituting a violation of [26 U.S.C. §§ 7201, 7206] of the Internal Revenue Code of 1986").

his plea would make him *eligible* for deportation simply by reading the text of the statute
. . . . Instead, Padilla's counsel provided him false assurance that his conviction *would not*
result in his removal.") (emphasis added).

It was not objectively unreasonable for Polsinelli to describe deportation as a
likely consequence of Dhar's conviction. *See Strickland*, 466 U.S. at 687-88 (explaining
that deficient performance "requires showing that counsel made errors so serious that
counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth
Amendment."). *Cf. Superville v. United States*, 771 F. App'x 28, 32 (2d Cir. 2019)
(affirming the district court's holding that petitioner failed to show he was prejudiced by
counsel saying petitioner "could be" deported rather than "would be" deported because
petitioner did not prove "a stronger warning would have led him to stand trial" and the
plea agreement he read and signed stated "removal is presumptively mandatory").

However, Polsinelli's assistance fell below an objective standard of
reasonableness when they allegedly advised Dhar that "deportation would likely only
happen" if Dhar received a custodial incarceration sentence. Doc. No. 7-3 ¶ 9; *see also
id.* ¶ 14 ("Polsinelli also assured me and my family that, since I had paid the restitution
and had no prior convictions, it was almost certain that the judge would rule against
incarceration, thus preventing deportation."). "[A]n affirmative misrepresentation of the
deportation consequences of a guilty plea falls outside [the] range of professional
competence." *Kovacs v. United States*, 744 F.3d 44, 50 (2d Cir. 2014) (citing *United
States v. Couto*, 311 F.3d 179, 188 (2d Cir. 2002)). In an unsworn statement, Polsinelli's
general counsel disputes Dhar's claims: "Polsinelli never advised Mr. Dhar that he
would not be deported if he did not receive prison time, as alleged in the § 2255." Doc.

No. 7-2 at 4.  I proceed under the assumption that Dhar's allegations set forth in his affidavit are accurate because Polsinelli did not submit its statement under oath.

The relevant statute does not distinguish between the immigration consequences for a noncitizen who is convicted of an aggravated felony and receives a custodial incarceration sentence and for a noncitizen who is convicted but does not receive a custodial incarceration sentence.  *See* 8 U.S.C. § 1227(a)(2)(A)(iii).  Consequently, even when "strict[ly] adher[ing] to the *Strickland* standard," Polsinelli's presumed advice concerning the effect a term of custodial incarceration would have on deportation was legally incorrect.  *Premo v. Moore*, 562 U.S. 115, 125 (2011); *Fulton v. Graham*, 802 F.3d 257, 265 (2d Cir. 2015) ("[A] defense counsel's performance is unreasonable when it is so deficient that it falls outside the wide range of professionally competent assistance.") (quoting *Kovacs v. United States*, 744 F.3d 44, 50 (2d Cir. 2014)) (internal quotation marks omitted).  *See also Strickland*, 466 U.S. at 687.

### b.   *Whether Counsel's Deficient Performance Prejudiced Dhar*

"[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  "[A] defense lawyer's incorrect advice about the immigration consequences of a plea is prejudicial if it is shown that, but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense."  *Kovacs v. United States*, 744 F.3d 44, 52 (2d Cir. 2014) ("*Strickland* prejudice focuses on the outcome of the proceeding rather than a defendant's priorities or desires").  "Moreover, to obtain relief on this type of claim, a petitioner must

convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (citing *Roe v. Flores–Ortega*, 528 U.S. 470, 480, 486 (2000)).

### 1. Whether Dhar Has Shown He Would Have Not Pled Guilty "But For" Polsinelli's Incorrect Advice

Dhar argues that, "[b]ut for counsel's unprofessional errors in providing immigration advice, there was a reasonably probability that [he] would not have pl[ed] guilty, . . . that he would have negotiated a plea that did not impact his immigration status," or that "he could have litigated a defense to the charges" instead of pleading guilty. Doc. No. 4 ¶ 31. Dhar insists that, had he "understood the immigration ramifications, [he] would have directed Polsinelli to negotiate a plea that would [have] avoid[ed] deportation or taken [his] case to trial." Doc. No. 7-3 at 5 ¶ 20. Further, Dhar claims that my imposition of a one year and one day term of incarceration and a two-year supervised release term were due to Polsinelli "fail[ing] to communicate the immigration consequences of the sentence" and further prejudiced him. Doc. No. 4 ¶¶ 32, 35.

"In some cases, a petitioner's affidavit stating that he would have accepted a plea deal absent an error by counsel, combined with a 'great disparity' between possible sentencing outcomes, may provide sufficient evidence that a petitioner would have acted differently but for counsel's error." *Andrews v. United States*, 381 F. App'x 51, 54 (2d Cir. 2010) (citing *United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir.1998)) (internal quotation marks omitted). But contemporaneous evidence belies Dhar's "self-serving assertion" that he did not fully understand the immigration ramifications of entering a guilty plea. *See Andrews*, 381 F. App'x at 54. Dhar's communications with Polsinelli, the plea agreement itself, declarations in Dhar's sentencing memorandum, statements by Dhar and on Dhar's behalf at the plea hearing, and

13

representations made on the record at sentencing demonstrate that Dhar was fully aware he was pleading guilty to a deportable offense and knew deportation was a likely consequence of his plea.

It is inaccurate for Dhar to claim that he became aware of the immigration consequences of his conviction "only after sentencing," when he also acknowledges that he was warned as early as November 2023 that the crime he would "certainly" be charged with was "ground[s] for deportation." Doc. No. 4 ¶¶ 10, 36. As stated above, Attorney Ahroni explained to Dhar in a November 2023 email what an aggravated felony was, that Dhar's "situation" would "certainly" count as an aggravated felony, and that an aggravated felony would be "a ground for deportation." *Id.* ¶ 10. Additionally, Dhar's plea agreement explicitly stated, "because the defendant is pleading to Count One of the Information, an offense that involves fraud or deceit in which the loss to the victim exceeds $10,000, *removal is presumptively mandatory*." Criminal Case, Doc. No. 8 at 7 (emphasis added); Criminal Case, Docs. No. 6-7. In signing the plea, Dhar affirmed his desire "to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is automatic removal from the United States" and his understanding that he would be "bound by the guilty plea regardless of the immigration consequences of the plea." Criminal Case, Doc. No. 8 at 7-8.

I asked Dhar about the immigration consequences to pleading guilty to ensure he understood what he was agreeing to before he signed the plea agreement. Criminal Case, Doc. No. 41 at 20:08-20:19 ("You are not a U.S. citizen, and I want to advise you that if you plead guilty today, there is a strong likelihood that you will be deported from this country or removed from this country due to your conviction. Do you understand that? [Dhar:] I understand that, your Honor."). Contrary to his assertion that he engaged an immigration attorney only after

sentencing, Dhar stated on the record at his plea hearing that he had "sought legal advice regarding immigration consequences of [his] plea." *Id.* at 20:16-19; Doc. No. 4 ¶ 36.

In Dhar's memorandum in aid of sentencing ("sentencing memorandum"), filed September 24, 2024, Polsinelli directly addresses the likelihood of his deportation. Doc. No. 21 at 1 ("Vishal Dhar deeply regrets not paying his taxes and fully accepts the consequences that will likely result in his deportation from the United States and separation from his family."); *id.* at 7 ("Mr. Dhar believes that it is important to take responsibility and pay what is due now to the IRS, even knowing that he likely will be deported from the United States at the conclusion of the matter."); *id.* at 15 ("Regardless of the sentence imposed by the Court, Mr. Dhar will feel the impact of his decisions for years to come, particularly if he is deported and permanently separated from his family."). Not only does Dhar's sentencing memorandum reference deportation, but it also describes deportation as a probable consequence *regardless* of whether he receives a custodial incarceration sentence. *Id.* at 1 ("Mr. Dhar respectfully requests that the Court impose a sentence of probation after its consideration of the Section 3553(a) factor[s], which *even still will likely result in his deportation* and the loss of his business.") (emphasis added); *id.* at 10-11 ("The significant consequences Mr. Dhar has already endured and will endure due to his non-citizen status underscore why justice is not served by adding a custodial sentence. . . . Mr. Dhar may be removed from the United States, where he has formed the majority of his professional connections and where his wife and children will continue to reside. All these consequences will serve *as enough punishment* to Mr. Dhar and have contributed to the goal of deterrence generally.") (emphasis added); *see generally id.* (explaining why a custodial sentence is unnecessary to punish Dhar). Dhar does not address any of the statements in the sentencing memorandum made on his behalf by Polsinelli. *See generally* Doc. No. 4.

Finally, at Dhar's October 7, 2024 sentencing, Attorney Erskine made several statements indicating that Dhar understood deportation was a possible and likely outcome. Criminal Case, Doc. No. 34 at 46:07-12 ("[Dhar] cooperated early with the government, admitting to his crime and immediately worked very, very hard to pay restitution in full before today's hearing, even knowing that he'll likely be deported from the United States at the conclusion of this case."); *id.* at 47:22-25 ("Possible deportation and permanent removal from his home and his community at the end of this case is the greatest punishment Mr. Dhar faces in many ways."); *id.* at 48:05-09 ("Years from now when Mr. Dhar is still separated from his family and friends and unable to come to the United States because he has been deported, he will continue to feel the consequences of his conduct."); *id.* at 51:16-19 ("Mr. Dhar will feel the impact of this decision for years to come, especially if he is deported from the United States and separated from his family."); *id.* at 78:01-04 ("[T]he crime that he has pled guilty to is a crime of moral turpitude. A crime of moral turpitude would qualify for potential deportation."). Additionally, AUSA Huang, the Court, and Dhar himself all referenced the likelihood of Dhar's deportation. Doc. No. 34 at 77:18-20 ("[AUSA Huang:] I believe that given the fact that the loss amount is greater than $10,000, it is a deportable offense."); *id*. at 84:16-18 ("[The Court:] [I]f you're ordered deported from the United States, you must remain outside the United States unless legally authorized to reenter."); *id.* at 59:14-18 ("[Dhar:] I am prepared to face the consequences of my actions. . . . A real consequence of going to prison is deportation. This alone means losing everything.").

"[T]he ultimate decision whether to plead guilty must be made by the defendant." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000). Here, Dhar made the decision to

plead guilty fully aware that being deported was a likely consequence of his plea.  Even if

Dhar only pled guilty because he genuinely believed he would not be deported if he did

not receive a term of custodial incarceration, his plea agreement stated that incarceration

was a possibility.  Criminal Case, Doc. No. 8 at 2 ("This offense carries a maximum

penalty of 5 years imprisonment.").  The Presentence Investigation Report also references

the statutory maximum prison term of five years and the United States Sentencing

Guidelines range of 12 to 18 months' imprisonment.  PSR, Criminal Case, Doc. No. 31 at

1, 22 (citing 26 U.S.C. § 7201; U.S.S.G. § 5C1.1(d)).  Dhar's sentencing memorandum

openly contemplates likely incarceration *and* deportation.  *See generally* Criminal Case,

Doc. No. 21 (advocating for a probationary sentence as opposed to custodial

incarceration); *id.* at 10 ("[J]ustice is not served by adding a custodial sentence. . . . In the

end, Mr. Dhar may be removed from the United States . . . .").

      Further, statements made by Dhar and his attorney at his plea hearing and

sentencing, as described above, confirm that Dhar was not under the illusion that

deportation was off the table.  *See generally* Criminal Case, Doc. No. 41 at 20:08-19

(indicating Dhar's understanding that pleading guilty would result in "a strong likelihood

that [he] will be deported from this country or removed from this country due to [his]

conviction"); Criminal Case, Doc. No. 34 at 46:07-47:12 (stating that Dhar knew he

would "likely be deported from the United States at the conclusion of this case"); *id.* at

41:18-19 ("Although sentencing guidelines, of course, do provide for a term of

incarceration . . . ."); *id.* at 59:17-18 ("A real consequence of going to prison is

deportation.").  *Contra Kovacs v. United States*, 744 F.3d 44, 50 (2d Cir. 2014). ("The

transcript of the plea allocution reflects repeated erroneous assurances by [the defendant's attorney] that misprision of felony was not a deportable offense.").

The contemporaneous evidence establishes that Dhar signed the plea agreement and attended his sentencing under the impression that *both* incarceration and deportation were anticipated outcomes.  Dhar has not provided any affirmative proof that, "but for counsel's unprofessional error[]" of repeating another attorney's advice that Dhar could avoid deportation if he did not receive a term of custodial incarceration, "there was a reasonable probability that [Dhar] could have negotiated a plea that did not impact [his] immigration status or that he would have litigated an available defense." *Kovacs*, 744 F.3d at 52.  He also has not "demonstrate[d] a reasonable probability that the prosecution would have accepted, and the court would have approved, a deal that had no adverse effect on [Dhar's] immigration status." *Id.* ("[T]he ultimate outcome of a plea negotiation depends on whether the government is willing to agree to the plea the defendant is willing to enter.").  Dhar's conclusory statement that "[h]ad I understood the immigration ramifications, I would have directed Polsinelli to negotiate a plea that would avoid deportation or taken my case to trial" is insufficient to establish a "reasonably probability" that a plea deal not adversely affecting his immigration status was possible. *Id.*; Doc. No. 7-3 ¶ 20.  *See also Premo v. Moore*, 562 U.S. 115, 132 (2011) ("Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial . . . .").

### 2.  Whether Polsinelli Prejudiced Dhar in Their Representation of Him at Sentencing

Dhar also claims Polsinelli failed to explain the consequences of his immigration status to me during sentencing, which "result[ed] in a sentence inconsistent with its intent and further

prejudice[ed]" Dhar. Doc. No. 4 at ¶ 35. That argument assumes that I was not well aware that

Dhar likely faced deportation upon sentencing, regardless of the length of custodial incarceration

to which I sentenced him. It also fails to acknowledge that my underlying reasoning in

sentencing Dhar is entirely separate from any immigration consequences he may face, including

being placed in ICE custody and eventually deported.

Dhar correctly points out that Polsinelli did not bring to my attention the fact that courts

"ordinarily should not impose a term of supervised release in a case in which . . . the defendant is

a deportable alien who likely will be deported after imprisonment." Doc. No. 4 ¶ 35 (quoting

U.S.S.G. § 5D1.1(c)). However, I imposed a term of supervised release knowing Dhar would

likely face deportation, for all the reasons previously stated in this order. Further, I imposed a

term of supervised release for entirely separate reasons than imposing a custodial incarceration

sentence—the purpose of supervised release is not punishment, but rehabilitation. *United States

v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from

those served by incarceration."). If Dhar is not deported, he will have the rehabilitative benefits

of supervised release; if he is deported, he will not suffer the burdens of supervised release.

Dhar also points out that, "[a]s a noncitizen convicted of an aggravated felony," he is

"ineligible to apply earned time credits towards his release" and potentially ineligible for

placement in a halfway house. Doc. No. 4 ¶¶ 33-34 (citing 18 U.S.C. § 3632(d)(4)(E); 8 U.S.C.

§ 1227(a)(2)(A)(iii); 18 U.S.C. § 1228(a)). Although Dhar correctly states that Polsinelli did not

bring that to my attention at sentencing, the inapplicability of good time credits to Dhar's

sentence does not change that fact that the one year and one day sentence is "relatively short."

Criminal Case, Doc. No. 34 at 79:11-12. More importantly, good time credit applicability may

have only affected my imposition of an additional day of custodial incarceration.[5]  *Id.* at 79:02-03 ("The one day is significant because it will mean that you will qualify for good time credits.").  Polsinelli's failure to bring the relevant statutes to my attention did not prejudice Dhar because it did not impact my intent to sentence Dhar to a term of custodial incarceration.

I recognized deportation was a very real possibility for Dhar whether or not I imposed a custodial sentence and regardless of its length.  I was fully aware at Dhar's sentencing that he might suffer immigration consequences, including deportation.  Criminal Case, Doc. No. 34 at 78:05-06 ("Well, I recognize that . . . [for Dhar,] there is potential [deportation.]").  I intended Dhar's sentence to reflect my careful consideration of the factors in 18 U.S.C. § 3553(a), as I stated on the record at Dhar's sentencing.  *Id.* at 78:15-79:01 ("I hope my comments addressed the seriousness of the offense, the need for deterrence, the need for respect for law and the need to consider your background and characteristics. Certainly I have tried to do that, and the result of that consideration is my intention to sentence you as follows: to a period of incarceration of one year and one day.").  Crucially, Dhar has not alleged that, but-for his counsel's failure to correctly inform me about the applicability of earned time credits and supervised release to his case, "he would not have pleaded not guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Dhar therefore suffered no prejudice from Polsinelli's alleged ineffectiveness at sentencing.

---

[5] Dhar's assertions are much different than those in *Fulton v. Graham*, 802 F.3d 257 (2d Cir. 2015).  In *Fulton*, the petitioner averred that counsel did not offer guidance during plea negotiations and "failed to discuss the pros and cons of accepting the plea offer," such as "weaknesses in the defense" and the evidence of his guilt.  802 F.3d at 266.  Those assertions along with "the significant disparity between the plea offer and the sentence imposed" supported a finding of prejudice.  *Id.* ("[T]he plea offer that was available to Fulton would have made him eligible for a ten-year sentence of incarceration . . . far less than the effective forty-year sentence that he received after trial.").

**IV.    Conclusion**

For all of the foregoing reasons, "strict adherence to the *Strickland* standard" requires me to **deny** Dhar's section 2255 petition, **doc. no. 4**.  *Premo v. Moore*, 562 U.S. 115, 125 (2011).

Because Dhar has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  *See* 28 U.S.C. § 2253(c)(2).

The Clerk is directed to close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 16th day of April 2025.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge